IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| RICKY KENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 2:05CV963-D |
| | ) | |
| | ) | |
| CARRIAGE FUNERAL HOLDINGS, | ) | |
| INC.; GREG BRUDNICKI; KENDALL | ) | |
| GLOVER; MELVIN PAYNE; | ) | |
| W. CLARK HARLOW; et al, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AFFIDAVIT OF RICKY KENT

STATE OF ALABAMA         )
                         )
COUNTY OF MONTGOMERY    )

My name is Ricky Kent, and I am the Plaintiff in the above captioned action. I am an adult, over the age of 19 years and competent to testify. I give this affidavit based on my own personal knowledge. This affidavit is given in support of my Motion to Remand.

In November 1997, Carriage Funeral Holdings, Inc. ("Carriage") entered into an Asset Purchase Agreement with Kent-Thornton Funeral Home ("Kent-Thornton"), whereby Carriage acquired the assets of Kent-Thornton. Because Kent-Thornton was a maturing business that had not reached its full potential, Carriage and the partners of Kent-Thornton included a three-year earnout provision within the Asset Purchase Agreement so that the partners of Kent-Thornton (myself included) would be able to take advantage of Kent-Thornton's expected growth over a



three-year period. Under the earnout provision, the next three years of Kent-Thornton's earnings (i.e., 1998, 1999, and 2000) would be averaged before interest, taxes, depreciation and amortization were deducted, and the result would be multiplied by seven. If this figure came to more than the $1,000,000.00 paid at the November 1997 closing, Carriage would then pay the overage to the former partners of Kent-Thornton.

Greg Brudnicki advised me in 2000 that the first two years of the earnout were greater than Carriage had anticipated, and it therefore wanted to "advance" a portion of the earnout payment ahead of time, so as to offset the amount that would have to be paid later. I agreed to accept the advance as Greg outlined it. However, I was not aware of any Amendment to the Asset Purchase Agreement and did not sign nor authorize anyone to sign the Amendment to the Asset Purchase Agreement on my behalf. I did not learn of the existence of the Amendment to the Asset Purchase Agreement bearing my forged signature until the spring of 2005.

I became concerned when Carriage's final earnout check to me, which arrived in or about April 2001, was considerably less than I had been led to believe, and I contacted Greg Brudnicki to ask about the reason for the lower amount.

Greg told me that Kendall Glover was the reason for the difference. Kendall was Kent-Thornton's manager for the first year of the three years of the earnout. Greg told me that, due to mistakes and/or fraudulent accounting by Kendall, the first year earnings were actually much less than had been first calculated, and therefore the three-year average was drastically reduced. Although I have asked on several occasions to review Kent-Thornton's books and accounts during the earnout period, I have not been allowed access to those documents even to this date.

I believe that Kendall and possibly others mismanaged Kent-Thornton's bookkeeping and accounts during the earnout period and/or participated in a fraud to conceal the truth about

Kent-Thornton's bookkeeping and accounts during the earnout period. I believe that he did this both at the time of his employment by Carriage as the manager of Kent-Thornton and afterward, when he was no longer employed by Carriage. I know that Carriage released him to do work that was contrary to the terms of the non-compete provisions of his employment contract with Carriage.

I am not sure of the extent to which Kendall Glover actually participated in drafting the Amendment to the Asset Purchase Agreement. However these things lead me to believe that Kendall Glover was aware of, and participated in, the conspiracy to defraud me: (1) Kendall's management of Kent-Thornton during a portion of the period covered by the earnout agreement, (2) Greg Brudnicki's statement that Kendall was responsible for the unexpectedly small final earnout check, and (3) the suspicious circumstances of Kendall's departure from Carriage. For these reasons, I believe Kendall Glover is personally liable to me for his part in the wrongdoing alleged in my Complaint, and he is a legitimate defendant in this action.

Further affiant saith not.

_____
Ricky Kent

Sworn to and subscribed before me this 1st day of November, 2005.

_____
Notary Public

My Commission Expires 9/10/08