IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RICKY L. KENT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NUMBER: 2:05cv963-D |
| | ) | **ORAL ARGUMENT REQUESTED** |
| CARRIAGE FUNERAL HOLDINGS, INC.; | ) | |
| GREG BRUDNICKI; KENDALL GLOVER; | ) | |
| MELVIN PAYNE; W. CLARK HARLOW; | ) | |
| et. al. | ) | |
| | ) | |
| Defendants. | ) | |

## Response In Opposition to Motion to Remand

Defendants, Carriage Funeral Holdings, Inc. ["Carriage"], Greg Brudnicki ["Brudnicki"], Melvin Payne ["Payne"] and W. Clark Harlow ["Harlow"] hereby respond in Opposition to the Motion to Remand filed by Plaintiff Ricky Kent ["Kent"] as follows:

Having discovered that, contrary to the allegations of the Complaint, Alabama resident Defendant Kendall Glover ["Glover"] was not the manager of the Kent-Thornton Funeral Home "at all material times" but instead was manager for less than a year and had left Carriage's employ more than a year prior to the forgery which forms the basis for his claims as plead, Kent seeks to resurrect his case against Glover by having this case remanded under a completely new and unplead theory, based on facts entirely inconsistent with the Complaint. Kent now knows that Glover could not have been involved in a forgery which occurred long after he had left Carriage over a document he knew nothing about. Kent's new theory for remand is that Glover mismanaged the funeral homes' books and records while manager and conspired to cover it up. There was no claim of mismanagement alleged against Glover in the Complaint, and there could not have been, as Kent

knew that any such claims would be time-barred. To the contrary, Kent alleged that Defendant Brudnicki sought to fraudulently conceal the alleged forgery by misrepresenting that Glover mismanaged the business, which is Kent's admission that Glover did not mismanage the business.

Kent's sudden shift is not only a tacit admission that the claims as plead, all based upon forgery, fail to state a claim against Glover, but is also improper in that he is attempting to raise new theories not originally pled based on facts inconsistent with those in the Complaint, the document which controls this Court's decision on fraudulent joinder. Glover has been fraudulently joined to this action solely in an attempt to maintain this case in Barbour County, and the Motion to Remand should be denied.

## I.  Fraudulent Joinder Standard

In order to establish that Glover is fraudulently joined, the removing Defendants have the burden of establishing that there is no possibility that Kent can prove a cause of action against him. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287-1288 (11th Cir. 1998). The Eleventh Circuit recently explained in *Legg v. Wyeth*, 2005 WL 2756717 (11th Cir. Oct. 25, 2005) (attached as Exhibit 1), that "no possibility" means the potential for liability "must be reasonable and not merely theoretical" and requires more for remand than a showing similar to the possibility that "a designated residence can be hit by a meteor tonight." *Id.* at *6, n.5. Instead, to satisfy the "no possibility" standard, the defendant must show that there is no "reasonable basis" for the asserted claims under state law, recognizing that "reason and common sense have some role" in making the determination. *Id.* at *6 and *6 n.5.

The determination of whether a defendant has been fraudulently joined is judged based on the pleadings as they existed at the time of the removal. *Cabalceta v. Standard Fruit Co.* 883 F.2d 1553, 1562 (11th Cir. 1989). While the parties are free to submit additional evidence to the Court to

assist it in making a determination on fraudulent joinder, a plaintiff cannot seek remand based on the submission of evidence or arguments which contradict the Complaint or seek to circumvent fraudulent joinder through the assertion of new and unplead theories or causes of action. *See Ironworks Unlimited v. Purvis,* 798 F.Supp. 1261, 1266 (S.D. Miss.1992) (recognizing that while a plaintiff seeking remand may submit evidence "to substantiate the facts underlying a claim that has been pleaded in the Complaint, it may not be used to assert a new claim that was not pleaded, and the Court must resolve removal and remand issues by resort only to the claims that existed in the Complaint at the time that the action was removed from state court."); *Conk v. Richards & O'Neil, LLP*, 77 F.Supp.2d 956, 961 (S.D.Ind.1999) (recognizing that in ruling on a motion to remand, the court may consider factual allegations contained in an affidavit submitted by the plaintiff "so long as those factual assertions are not inconsistent with the allegations of the complaint."). Because there is no reasonable basis under Alabama law to impose liability upon Glover under the claims as originally pled, he is fraudulently joined and Kent's Motion to Remand should be denied.

II.    **Kent's Forgery Claims Against Glover Fail to Provide a Reasonable Basis Upon Which to Impose Liability on Glover.**

To deny Plaintiff's Motion to Remand, the Court never needs to get beyond a few basic principles and undisputed facts. Kent's Complaint, which governs for purposes of determining fraudulent joinder, is exclusively premised upon an alleged forgery of the February 16, 2000 Amendment to the Asset Purchase Agreement (the "Amendment").

The Complaint alleges that Glover was the manager of the Kent-Thornton Funeral Home (the "Funeral Home") "at all material times," taking over as manager of the Funeral Home for Carriage after it acquired the Funeral Home in November of 1997 from Plaintiff Ricky Kent, his brother Charles Kent (who has not been named as a plaintiff or defendant in this case), Jane Thornton and

Defendant Greg Brudnicki. Complaint at ¶s 4, 9 and 13. Under the terms of the original Asset Purchase Agreement, Kent and the former owners would be entitled to payment of a Contingent Purchase Price if certain conditions were met based on the operation of the Funeral Home for the fiscal years 1998 – 2000. Complaint at ¶s 9 and 10. In early 2000, Kent was allegedly approached by Defendants Brudnicki, Payne and Harlow about agreeing to the Amendment, which would allow Carriage to pay an advance of the Contingent Purchase Price that Carriage otherwise would owe Kent and the other former owners in 2001. *Id.* at ¶14. Kent alleges that he refused the Amendment but that Brudnicki forged his name to the Amendment nonetheless.[1] *Id.* at ¶s 16 and 17. When Kent received payments of the Contingent Purchase Price from Carriage at the end of 2000 and 2001 which were less than he anticipated, he contacted Brudnicki regarding the apparent shortfall and was told both times by Brudnicki that the Funeral Home had not done as well because of alleged mismanagement by Glover. *Id.* at ¶s 18 and 19. In an attempt to salvage his claims from the statute of limitations, Kent then claims to have "discovered the fraudulent Amendment" in March of 2005. *Id.* at ¶ 20.

Glover's uncontradicted declaration establishes that he had long since left Carriage's employ at the time of the forgery, was not involved in the execution of the Amendment, and in fact had no idea that there even was an Amendment until this lawsuit was instituted. Decl. of K. Glover, ¶ 5.[2] It is further undisputed that Glover has not spoken with or otherwise communicated with any of the other defendants or anyone else employed with Carriage from the time he left the Funeral Home in February of 1999 until he received a copy of this lawsuit in September of 2005. *Id.* As such, there

---

1 Kent's affidavit now contradicts this allegation by stating that Kent agreed to the terms of the Amendment. Kent Aff. p. 2. Instead of charging only Brudnicki with forgery, Kent now says the forgery was performed by "Brudnicki (or some other party unknown to Kent at this time)..." Motion to Remand, p. 3.

2 Glover's declaration is attached to Defendant's Notice of Removal.

is no reasonable basis upon which Kent can establish any of the claims actually plead in the Complaint against Glover.

While there are numerous technical defects with the claims against Glover (all analyzed in detail below), the Court need not get beyond the glaring factual chasm that Glover had been gone for a year before the alleged wrongdoing occurred. Applying "reason and common sense", Glover cannot be liable for acts which are alleged to have occurred more than a year after he was gone, committed by parties with whom he had not communicated with since leaving, and involving the forgery of an Amendment he did not even know existed.

### A. Each Claim Asserted Against Glover Lacks a Reasonable Basis.

Kent claims to have asserted nine claims against Glover in his Complaint.[3] Kent's Brief in Support of Motion to Remand ("Remand Brief"), p. 4. A careful review of the allegations in the Complaint as they relate to Glover demonstrates that there is no reasonable basis under Alabama law to impose liability upon him based upon the claims as pled.

Count I – Fraud and Suppression. Kent alleges that "Brudnicki fraudulently signed Ricky Kent's name to the Amendment", each individual defendant "facilitated the fraud by preparing the Amendment documents and then taking part in a portion of the efforts to have it signed and put into effect" and that all the defendants "perpetuated the fraud, or conspired to perpetuate the fraud by carrying out the fraudulent Amendment to the Asset Purchase Agreement and suppressing its fraudulent character, repeatedly affirmatively representing to Plaintiff that the reason the payout was so low as due to mismanagement and low profits to the Funeral Home in 2000 and 2001."

---

3 For some counts, Kent seeks relief from all "Defendants", although there are no factual allegations to support recovery from all "Defendants". For example, nowhere in the Complaint does Kent even allege that Glover owed him a fiduciary duty or that Glover forged his signature, yet he apparently seeks relief from Glover for breach of fiduciary duty (Count XI) and forgery (Count XIII).

Complaint ¶s 22-24.

Assuming that a forgery would even constitute fraud, there is no reasonable basis for Kent to impose liability upon Glover for a forgery allegedly committed by Brudnicki.[4] As it relates to the allegations in paragraph 23 regarding Glover's facilitation of fraud, assuming this even states a cause of action, Glover has expressly contradicted those allegations by declaring that he had no involvement in the preparation or execution of the allegedly forged Amendment, had no involvement in or discussions with anyone regarding the execution of the Amendment and further had no knowledge of the execution of the Amendment. Decl. of K. Glover, ¶ 5. This fact is uncontroverted by Kent and therefore is established for purposes of the instant motion.[5] *Legg*, 2005 WL 2756717 at *4. As for the allegations of fraud asserted in paragraph 24,[6] these allegations present no reasonable basis for imposing liability upon Glover in light of his uncontradicted declaration that he had no involvement in nor knowledge of the Amendment until this lawsuit was filed. Decl. of K. Glover, ¶ 5.[7] Kent has no reasonable basis to impose liability upon Glover under a claim for suppressing the

---

[4] For example, Kent does not contend that Glover is vicariously liable for Brudnicki's alleged actions. To the contrary, Kent specifically alleges that Brudnicki committed the forgery in the line and scope of his employment as a representative of Carriage. Complaint ¶ 17.

[5] In his affidavit, Kent admits that he is "not sure of the extent to which Kendall Glover actually participated in drafting the Amendment to the Asset Purchase Agreement." Kent Aff. p.3.

[6] Count I is subject to Rule 9(b)'s pleading requirement of specificity. Plaintiff's shotgun pleading, which seeks to assert fraud claims against the "defendants", fails to comply with Rule 9(b) and therefore provides an independent basis for finding that Count I fails to provide a reasonable basis for imposing fraud liability on Glover. *See McAllister Towing & Transp. Co., Inc. v. Thorn's Diesel Service, Inc.*, 131 F.Supp.2d 1296, 1302 (M.D. Ala. 2001) (dismissing plaintiff's fraud claims, asserted generally against the "defendants", because the complaint's fraud "allegations simply fail to distinguish among Defendants and specify their respective role in the alleged fraud, thereby not fulfilling the pleading requirements of Rule 9(b).").

[7] Kent's speculation and conjecture that Glover knew of the forged Amendment and participated in a conspiracy to defraud him based on the fact that: Glover managed the Funeral Home for a year, Brudnicki told him the shortfall was due to Glover's mis-management and Glover's "suspcicious" departure from Carriage, is not evidence sufficient to create a contradiction and a question of fact on Glover's knowledge and participation in the alleged fraudulent scheme involving the Amendment. *See Mann v. Olsten Certified Healthcare Corp.*, 49 F.Supp.2d 1307, 1320 n.52 (M.D.Ala.1999) (recognizing that speculation is insufficient to create a genuine issue of material fact); *Ferguson v.*

fraudulent character of the Amendment when Glover undisputedly had no knowledge of the Amendment, much less its alleged fraudulent character, and the Complaint doesn't allege otherwise. There isn't even room for speculation. It is undisputed that Glover, unlike the other individual Defendants, had no connection whatsoever with Carriage at the time of the alleged forgery. The most Kent can do is to hint darkly at a fact not raised in the Complaint that Carriage released Glover from his no-compete obligations a year before the alleged forgery [Remand Brief, p. 4], and even this is a red herring. Carriage released the no-compete to relieve itself of a severance obligation, and within a few months after doing so, threatened to sue Glover and his new employer over an alleged breach of a provision in his contract that wasn't released.

Without knowledge of the fact allegedly suppressed, Glover cannot be liable under Alabama law. *See Cornelius v. Austin*, 542 So.2d 1220, 1224 (Ala. 1989) (recognizing that "[a]s a matter of law, one can only be liable for concealing facts of which one has knowledge."); *Liberty Nat. Life Ins. Co. v. McAllister*, 675 So.2d 1292, 1296 (Ala. 1995) (recognizing that to succeed on suppression claim, plaintiff must establish that defendant had knowledge of fact allegedly suppressed). Kent also fails to allege that Glover had a duty to disclose the alleged fraudulent nature of the Amendment, another necessary element to a fraudulent suppression claims. *See State Farm Fire and Casualty Co. v. Owen*, 729 So.2d 834, 837 (Ala. 1998) (recognizing "that a party's mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact."). Lastly, there is no allegation that Glover represented to Kent that the payout was low due to mismanagement. To the contrary, the allegation in the Complaint is that Brudnicki made the representation. Complaint ¶s 18 and 19. In the absence of a representation, there is no reasonable

---

*Baptist Health System, Inc.,* 910 So.2d 85, 93 (Ala.2005) (recognizing that "Evidence ... which affords nothing more than mere speculation, or conjecture, or guess is insufficient to warrant the submission of a case to the jury.").

7

basis upon which to hold Glover liable. *See Ex Parte Alafa Mutual Fire Insurance Company*, 742 So.2d 1237, 1240 (Ala. 1999) (recognizing that plaintiff's misrepresentation claims must fail where there was no evidence that the alleged representation occurred).

<u>Count II - Conspiracy to Commit Fraud and Suppression.</u>  Kent simply alleges that "[e]ach Defendant conspired to commit the ongoing fraud and suppression described above." Complaint ¶ 29. Therefore, the conspiracy to defraud as alleged in the Complaint is a conspiracy between all the defendants to prepare the Amendment, forge Kent's name to it and then cover up the fraudulent nature of the Amendment by not disclosing that it had been prepared and forged, instead misrepresenting to Kent that the reason for the low payout was mismanagement of the Funeral Home by Glover. Complaint ¶s 22-24.

Under Alabama law, civil conspiracy is by definition an intentional act, requiring knowledge on the part of each alleged conspirator of not only the underlying wrongful act, but also the agreement to act together in bringing about the wrongful act:

> In order to prove conspiracy, a plaintiff must allege and prove that the defendant … agreed with at least one other co-conspirator … to accomplish an unlawful end … and intended to have that unlawful end brought about. The essence of a conspiracy is an agreement, a meeting of the minds between the conspirators. One cannot inadvertently become a member of a civil conspiracy. The plaintiff must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy.

*First Bank of Childersburg v. Florey*, 676 So.2d 324, 327 (Ala.Civ.App.1996) (citations omitted).

Once again, Glover's declaration stands uncontradicted as to the central elements of the conspiracy claim as plead. Glover had no involvement in the preparation or execution of the Amendment. Decl. of K. Glover, ¶ 5.[8]  Glover had no dealings, conversations or communications

---

Therefore, there are no facts to resolve in favor of Kent on this issue. *Legg*, 2005 WL 2756717 at *4.
[8] Glover's relationship with the other defendants is insufficient to establish a conspiracy. *Scott v. Commonwealth Land Title Ins. Co.*, 518 So.2d 102, 105 (Ala. 1987) (refusing to adopt the plaintiff's argument that "one person's

with anyone regarding the Amendment and in fact had no knowledge that an Amendment even existed until this lawsuit was filed. *Id.*[9] Importantly, Kent does not allege that Glover had any knowledge of the alleged fraudulent Amendment.[10] Without knowledge that the Amendment even existed, Glover could not have known that it had been forged or that there was an agreement among the other defendants to defraud Kent by forging his name to the Amendment. Because Glover can't inadvertently become a member of a conspiracy, his lack of knowledge is fatal to Kent's conspiracy claim and therefore such claim does not provide a reasonable basis upon which to refute Glover's fraudulent joinder in this case. *See Scott v. Commonwealth Land Title Ins. Co.*, 518 So.2d 102, 104 (Ala.1987) (affirming summary judgment in favor of defendant on plaintiff's conspiracy to defraud claim, finding no evidence that the defendant had any knowledge of the details of the allegedly fraudulent transaction involving the plaintiffs, no evidence that the defendant knew the documents reflecting the allegedly fraudulent transaction were forged and therefore had no reason to know or suspect that any fraud had been committed.); *Anglin v. Household Retail Services, Inc.* 17 F.Supp.2d 1251, 1260 (M.D.Ala.1998) (granting summary judgment in favor of defendant on plaintiff's conspiracy to defraud claim where there was no evidence that the defendant had knowledge that its alleged co-conspirator made fraudulent statements to the plaintiff and further there was no evidence

---

material relationship with a person accused of fraud makes that first person subject to a claim of conspiracy to commit fraud.").

9 Applying "reason and common sense" as required by the Eleventh Circuit in *Legg*, Glover's lack of knowledge of the Amendment makes perfect sense in light of the fact that it was executed over a year after Glover stopped working for Carriage at the Funeral Home. Decl. of K. Glover, ¶ 4.

10 Kent's affidavit, in which he speculates that Glover was aware of and participated in the conspiracy, is insufficient to create a question of fact on this issue. Although liability for conspiracy may be supported with circumstantial evidence, "the evidence of the agreement [between coconspirators] must be sufficient to create more than suspicion or conjecture…." *First Bank of Childersburg,* 676 So.2d at 327 (citations omitted) (recognizing also that circumstantial evidence which supports equal inferences of lawful and unlawful action is insufficient to prove a conspiracy); *see also Keller v. Security Federal Savings & Loan Association*, 555 So.2d 151, 155 (Ala. 1989) ("speculation of misconduct does not constitute proof of conspiracy").

of an agreement between the defendants to defraud the plaintiff); *Campbell v. Civil Air Patrol*, 131 F.Supp.2d 1303, 1317-1318 (M.D. Ala. 2001) (granting summary judgment in favor of defendant on plaintiff's conspiracy claims where the only "evidence" of an agreement between the alleged conspirators was based upon supposition and unsupported allegations).

In *Anderson v. Allstate Life Ins. Co.*, 2001 WL 228057 (S.D. Ala. Feb. 1, 2001)(M.J. Cassady)(attached as Exhibit 2), the plaintiffs filed suit in state court against an insurance company and two agents for fraud, negligence and conspiracy, based on the central allegation that they had been fraudulently induced into purchasing life insurance. The defendants removed the case to federal court, arguing that one of the named agents, who was the only resident defendant, was fraudulently joined. In support of removal, the resident agent submitted an affidavit stating that he had never met with the plaintiffs regarding the insurance policies at issue and had never made any representations to, nor had any discussions with, the plaintiffs regarding the terms of the policies at issue. *Id.* at *4. The plaintiffs moved to remand, arguing that they had stated a claim for conspiracy to defraud against the resident defendant. *Id.* at *5. Relying on the resident defendant's affidavit disclaiming any knowledge of or involvement with the sale of the policies at issue, the Court denied the motion for remand, finding that plaintiff's conspiracy to defraud claim "fails both legally and from an evidentiary standpoint in regard to the clear legal requirement that all conspirators must have knowledge of, and the intent to bring about, the object of the claimed conspiracy…." *Id.* at *9.

Count VIII – Negligence. Kent simply alleges that "Defendants owed Plaintiff a legal duty not to injure him as set forth above, but breached that duty as set forth above, causing damage to Plaintiff." Complaint ¶ 54. The specific duty that is alleged to have been breached by Glover is a

mystery.[11] However, what is known is that Kent was allegedly injured by such negligence in 2000 when he received a lower payment than he claims to have been entitled. Complaint ¶ 18; Remand Brief, p. 9 (the effects of Glover's wrongdoing "were not felt by Kent until the end of 2000."). Therefore, regardless of what duty this claim is allegedly based upon, Kent, by his own admission, was injured by its alleged breach as early as 2000, yet waited until September of 2005 to file the instant lawsuit. Because negligence claims under Alabama law are subject to a two year statute of limitations which begins to run from the time of the first injury, regardless of whether the full extent of the damage is known, Kent has no reasonable basis under Alabama law for imposing liability on Glover for negligence. *See* Ala. Code §6-2-38(l); *Booker v. United American Ins. Co.*, 700 So.2d 1333, 1339 (Ala. 1997) (recognizing that negligence and wantonness claims are subject to a two year statute of limitations); *Koch v. State Farm Fire & Casualty Co.*, 565 So.2d 226, 231 (Ala. 1990) ("A negligence cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury.").

Count XI – Wantonness Fraud and Suppression. In this Count, which is again subject to Rule 9(b)'s pleading requirements, Kent simply alleges that the "Defendants owed a duty, based on their relationship with Plaintiff, to disclose the fraud perpetrated upon the Plaintiff, but wantonly failed to do so." Complaint ¶ 57. Again, such a generalized, non-specific allegation does not comply with Rule 9(b)'s specificity requirements and provides no reasonable basis upon which to impose liability on Glover. *McAllister Towing*, 131 F.Supp.2d at 1302. Importantly, the claim does not allege that Glover had knowledge of the alleged "fraud perpetrated upon the Plaintiff", which is

---

11 Kent argues that Glover's declaration does not contradict the allegations of this Count where it is alleged that "Glover breached a legal duty to properly manage the books and accounts of [the Funeral Home] during his term as a

earlier identified as the forged Amendment. Complaint ¶ 24. As analyzed in more detail above under Count I, Glover's lack of knowledge of the Amendment and its terms is fatal to any claim that he suppressed its existence.

Count X – Wanton Breach of Contract. Kent alleges here that the "Defendants wantonly breached their contract as set forth above." Complaint ¶ 62. Earlier in the Complaint, Kent actually identifies the breach of contract as the failure to honor the Asset Purchase Agreement. *Id.* at ¶ 31. Nowhere is it alleged that Glover is a party to the Asset Purchase Agreement and Glover's declaration affirmatively establishes that he was not a party to the Asset Purchase Agreement. Decl. of K. Glover, ¶ 7. As Glover is not a party to the Asset Purchase Agreement, he cannot be held liable for its alleged breach. *See Pate v. Rollison Logging Equipment, Inc.*, 628 So.2d 337 (Ala.1993) (recognizing that defendant, who was not a party to contract allegedly breached, could not be held liable to plaintiff for breach of contract).

Count XI – Wanton Breach of Fiduciary Duty. Nowhere in the Complaint does Kent allege that Glover owed him a fiduciary duty. Instead, the Complaint specifically alleges that Brudnicki owed Kent a fiduciary duty. Complaint ¶s 50 and 65. Glover cannot be liable for breaching a fiduciary duty he is not alleged to have owed to Kent.

Count XII – Wantonness. As a factual basis for this claim, Kent's Complaint simply says that the "Defendants wantonly injured Plaintiff as set forth above." Complaint ¶ 68. Even assuming that such a bald allegation is sufficient to state a claim for wantonness, Kent was admittedly injured as early as 2000 by the alleged wrongdoing of the "Defendants" and therefore this claim is likewise barred by the statute of limitations. *See Booker*, 700 So.2d at 1339 (recognizing that negligence and

---

[Funeral Home] employee from 1997-1999." Remand Brief, p. 7. There are no allegations that this duty existed, much less was breached, anywhere in Count VIII, or elsewhere in the Complaint.

wantonness claims are subject to a two year statute of limitations). In any event, the only injury identified in the Complaint arises from the Amendment that he alleges was forged and Glover cannot be liable if he had no knowledge of the Amendment.

Count XIII – Forgery.  Although asserting only that "Brudnicki forged Plaintiff's signature to the Agreement to the Asset Purchase Agreement," Kent nonetheless seeks relief from all "Defendants" under his forgery claim.  Complaint ¶ 70.  Again, there is no alleged basis upon which to make Glover liable for forgery and therefore Glover is fraudulently joined as to this claim as well.

Count XV – Conspiracy.  Kent's final attempt to assert a claim against Glover is a conspiracy claim premised upon the allegation that "[e]ach Defendant conspired to commit the forgery as described above."  There is no reasonable basis for this claim as Glover had long since left his employment with Carriage at the time of the alleged forgery and his declaration establishes that he had no involvement in the execution of the Amendment and did not even know that it existed until being served with this lawsuit.  Decl. of K. Glover, ¶ 5.  Glover's lack of knowledge is fatal to Kent's conspiracy to forge claim and provides no reasonable basis upon which to impose liability upon him.  *See, e.g., Scott* 518 So.2d at 104 (affirming summary judgment in favor of defendant on plaintiff's conspiracy to defraud claim, finding no evidence that the defendant had any knowledge of the details of the allegedly fraudulent transaction involving the plaintiffs, no evidence that the defendant knew the documents reflecting the allegedly fraudulent transaction were forged and therefore had no reason to know or suspect that any fraud had been committed.).

**III.     Plaintiff Cannot Now Seek Remand on a New and Unplead Theory, Especially One Which is Time-Barred and is Based on Facts Inconsistent With the Complaint.**

Realizing that Glover was not even employed by Carriage at the time of the alleged forgery and was not involved in the events leading up to the alleged forgery, Kent, through his Motion to Remand, now seeks to surreptitiously amend his complaint to assert a new theory based on facts which are inconsistent with those alleged in the Complaint.[12] Kent's new theory is that Glover mismanaged and/or fraudulently handled the books and records of the Funeral Home during the eight months he was the manager and then conspired to cover up the alleged fraudulent bookkeeping. *See* Remand Brief, p. 4 ("Kent has alleged that both before and after his departure from Carriage, Glover was aware of and participated in a conspiracy to defraud Kent from the benefit of his bargain under the Agreement through his bookkeeping and accounts of [the Funeral Home] during a portion of the earnout period and/or that he participated in a fraud to conceal the truth about [the Funeral Home's] bookkeeping and accounts during the earnout period.").[13] While it is improper to assert new claims and theories in support of remand, even if this Court were to consider Kent's new claims, they would all be time-barred as Kent, by his own admission, was told by Brudnicki in 2000 that Glover had mismanaged the company and Kent was damaged by such alleged mismanagement

---

12 Kent cannot seek to obtain remand by now asserting facts which are inconsistent with the allegations of his Complaint. *Conk*, 77 F.Supp.2d at 961 (recognizing that in ruling on a motion to remand, the court may consider factual allegations contained in an affidavit submitted by the plaintiff "so long as those factual assertions are not inconsistent with the allegations of the complaint."). In his Complaint, Kent alleges that Brudnicki sought to cover up the forgery by misrepresenting to Kent that the low payouts he received were due to mismanagement by Glover. Complaint ¶s 18, 19 and 24. In seeking remand, Kent now claims to have been damaged because Glover did in fact mismanage the books and records of the Funeral Home. Remand Brief, p. 4.

13 These allegations are found nowhere in Kent's Complaint. In fact, the only reference to mismanagement in the Complaint is an allegation that in 2000 and 2001, Brudnicki represented to Kent that the reason Kent's payments were lower that Kent anticipated was because of Glover's mismanagement. Complaint ¶s 18, 19 and 24. The fact that mismanagement is not the theory of Kent's Complaint is shown through Kent's attempt to salvage his pled fraud claims from the statute of limitations by alleging that he "discovered" the fraud in March 2005, and then identifies the fraud as "the fraudulent Amendment", not any mismanagement, which the Complaint clearly reveals he was on notice of since the end of 2000. Complaint ¶s 20 and 18.

when he received a lower payment at the end of 2000 than he otherwise was entitled to.[14]

It is undisputed that Glover managed the Funeral Home from November of 1997 until July of 1998. Decl. of K. Glover, ¶s 3 and 4; Remand Brief, p. 4. Under his new theory, Kent admittedly was damaged by the alleged mismanagement or fraudulent bookkeeping by the end of 2000, when he received his first payment from Carriage which was less than he was allegedly entitled. Remand Brief, p. 9 ("Although [Glover] may have been gone from Carriage by February 1999, the effects of his bookkeeping and accounting practices were not felt by Kent until the end of 2000."). The statute of limitations on all of Kent's non-fraud claims premised upon Glover's alleged mismanagement therefore began to run in 2000.[15] *See* Ala. Code §6-2-38(l); *Booker v. United American Ins. Co.*, 700 So.2d 1333, 1339 (Ala. 1997) (recognizing that negligence and wantonness claims are subject to a two year statute of limitations); *Tonsmeire v. AmSouth Bank*, 659 So.2d 601, 604 (Ala.1995)(recognizing that claims for breach of fiduciary duty are subject to the two year statute of limitations).[16]

Although the discovery rule would apply to Kent's new claims for misrepresentation and suppression, Plaintiff's own Complaint and Affidavit expressly admit that he was told of Glover's alleged mismanagement and fraudulent accounting in 2000 and again in 2001. Complaint ¶s 18 and

---

14 Claims asserted by Kent, a former shareholder, against Glover for alleged mismanagement of Carriage suffer from an additional defect, as Kent would not have standing to bring such claims in his individual capacity. *See Stallworth v. AmSouth Bank of Alabama* 709 So.2d 458, 467 (Ala.1997) (recognizing that stockholder could not bring a claim in his individual capacity against corporate director for mismanagement).

15 Although Kent's breach of contract claim is subject to a six year statute of limitations, it is undisputed that Glover is not a party to any contract with Kent, much less the contract allegedly breached. Decl. of K. Glover, ¶ 7. As Glover is not even a party to the Agreement, he cannot be held liable for its alleged breach. *See Pate*, 628 So.2d 337 (Ala.1993) (recognizing that defendant, who was not a party to contract allegedly breached, could not be held liable to plaintiff for breach of contract).

16 There is no "discovery rule" for non-fraud tort claims such as negligence, wantonness or breach of fiduciary duty. *See Booker v. United American Ins. Co.*, 700 So.2d 1333, 1339 (Ala. 1997) (recognizing that the discovery rule of

19; Aff. of R. Kent, p. 2 (In April of 2001, "Greg [Brudnicki] told me that, due to mistakes and/or fraudulent accounting by Kendall [Glover], …."). Therefore, the two-year statute of limitations for misrepresentation and suppression began to run at that time and also expired long before Kent filed his claim in September of 2005. *Bullock v. United Benefit Ins. Co.*, 165 F.Supp.2d 1255, 1258 (M.D. Ala. 2001) ("If the only claims against a resident defendant are barred by the statute of limitations, then there is no possibility the plaintiff can establish a cause of action against the resident defendant. In such a situation, the resident defendant is deemed to be fraudulently joined.").

The conspiracy to defraud claim, because it is a derivative claim and not capable of standing alone, fails because the underlying fraud claim is time-barred. *See Thompson Properties 119 AA 370, Ltd. v. Birmingham Hide and Tallow,* 897 So.2d 248, 266 (Ala.2004) (because the underlying fraud action was not viable, plaintiff's conspiracy to defraud claim failed as well). In addition to being legally flawed due to the lack of a valid underlying claim, Kent's new theory that Glover was involved in a conspiracy to deprive him of the benefit of his bargain under the original asset purchase agreement is also without any factual support or basis in "reason and common sense". It is undisputed that Glover had no knowledge of the terms of either the original asset purchase agreement or the allegedly fraudulent Amendment. Decl. of K. Glover, ¶ 5. Without knowing that Kent, and the other former owners of the Funeral Home (including alleged co-conspirator Brudnicki) were entitled to additional compensation based on the performance of the Funeral Home during the years 1998-2000, how could Glover have been involved in a conspiracy to deprive Kent of funds he otherwise didn't know Kent was entitled to?[17] Therefore, even if this Court were to allow Kent in

---

Alabama Code § 6-2-3 "does not operate to postpone the running of the limitations period for nonfraud claims...."). 
17 It certainly does not rise to the level of "overreaching" to point out that Glover, who has no knowledge of the

effect to amend his original Complaint and proceed under the new and unpled theory that Glover is liable due to his mismanagement of the Funeral Home's books and records or was otherwise involved in some conspiracy to deprive Kent of the funds he was rightfully owed under the original Asset Purchase Agreement, the facts before this Court and applicable law render all such claims baseless and establish that Glover had indeed been fraudulently joined in this action.

**Conclusion**

Ricky Kent chose to file this action in State Court and sought to prevent its removal by asserting generalized claims against Glover based solely upon Glover's position as a manager of Kent-Thornton Funeral Home.  Now that Kent has learned that Glover was not the manager at the time of the wrongdoing alleged in his Complaint, he has attempted to completely change the theory of his lawsuit to try and thwart the diverse Defendants' right to have this case heard in a federal forum.  Kent's tactics are not only improper, but futile as well, since his newfound theories are all barred by the applicable statute of limitations.  Kent therefore has no reasonable basis for the claims asserted against Glover and his efforts to keep this case in State Court should not be approved by this Court, which is called to be "equally vigilant to protect the right to proceed in th[is] Federal Court." *Legg*, 2005 WL 2756717 at * 6.  Plaintiff Ricky Kent's Motion to Remand is therefore Due to Be DENIED.

                    s/J. David Martin…………
                    Robert D. Segall (SEG003)
                    J. David Martin (MAR120)
                    *Attorneys for Defendants*

---

terms of either the original agreement or Amendment, and therefore no knowledge of Kent's right to additional payments based upon the performance of the Funeral Home, could not have been involved in a conspiracy to operate the Funeral Home in such a manner as to deprive Kent and the other former owners of additional payments Kent claims an entitlement to.

                                Copeland, Franco, Screws & Gill, P.A.
                                444 South Perry Street
                                Post Office Box 347
                                Montgomery, Alabama 36101-0347
                                Phone: 334/834-1180
                                Facsimile: 334/834-3172

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 21st day of November, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Dennis Mitchell Henry      **mitch@whlpc.com**

    Kimberly Shubert DeShazo  kdeshazo@whlpc.com, glenda@whlpc.com,
                                                kfarley@whlpc.com, esh@whlpc.com

                                                        s/J. David Martin…………