# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.2d                                                                                       Page 1

Not Reported in F.Supp.2d, 2001 WL 228057 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. Alabama
Southern Division.
Armon ANDERSON, Jr., and Audrey Anderson,
Plaintiffs,
v.
ALLSTATE LIFE INSURANCE COMPANY, et
al., Defendants.
**No. CA 00-0958-C.**

Feb. 1, 2001.

MEMORANDUM OPINION AND ORDER

CASSADY, Magistrate J.
**\*1** This cause is before the Court on the plaintiffs' motion to remand, as amended (*see* Docs. 4-5 & 13), and the defendants' briefs in opposition to the motion to remand (Docs. 7 & 14). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all further proceedings, including disposition of this motion. (*See* Doc. 12 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73 , the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, and order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the contents of the briefs, all pertinent material submitted in support of those briefs, and the arguments of counsel on January 5, 2001, the Court DENIES the motion to remand.

FINDINGS OF FACT

1. On September 22, 2000, Armon and Audrey Anderson filed a seven-count complaint in the Circuit Court of Mobile County, Alabama, against Allstate Life Insurance Company, Douglas Jeffries, Jack Morgan, and numerous fictitious parties, alleging various causes of action arising out of their purchase of two Flexible Premium Adjustable Life Insurance policies. (*See* Doc. 1, COMPLAINT)
7. On or about July 15, 1996, Mr. Anderson was approached by Jeffries and Morgan to discuss the Andersons' coverage. They represented to the Andersons that Mr. Anderson could purchase a life insurance policy on himself with a $70,000.00 death benefit and a spousal rider for Mrs. Anderson in the amount of $25,000.00. The monthly premium was to be set and permanent at $259.00 a month with the coverage set and permanent as well. The policy issued on or about August 1, 1996 as a Flexible Premium Adjustable Life Insurance policy with policy number 714094598. The policy issued with a standard (smoking) rating for Mr. Anderson. The term rider issued with a non-smoker rating for Mrs. Anderson.
8. Jeffries and Morgan further stated and represented to the Andersons that they should surrender and replace a whole life type of policy they had with Metropolitan Life Insurance Company in the amount of $50,000.00 and purchase this Allstate policy. Said policy was surrendered and lost upon the purchase of this Allstate policy and had policy number 943304002A.
9. Approximately 2 years later on or about September 25, 1998, the Andersons were again contacted by these agents who stated that they could lower their premiums on the policy for Mr. Anderson by the policy being re-rated as a non-smoker. They further stated that they could take off the rider for Mrs. Anderson and that it was recommended for the Andersons to purchase a separate permanent life insurance policy on her in the amount of $25,000. The Andersons were further told that the premium for this policy was only a one time fee of $50.00, and would not be any additional expense for them.
10. Relying on the agents' statements and representations, the Andersons agreed to the modification of Mr. Anderson's policy, the discontinuing of the term rider for Mrs. Anderson,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 2
Not Reported in F.Supp.2d, 2001 WL 228057 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

and [t]he purchase of a new policy for Mrs. Anderson. The new policy issued on or about October 7, 1998 as a Flexible Premium Adjustable Life policy for the coverage amount of $25,000.00 and policy number 790782322.

*2 11. The premium on Mr. Anderson's policy was to drop to [$]150.00 per month due to the above changes.

12. It was not until September of 1999, that the Andersons discovered problems with their policies. The Andersons learned for the first time that the policies issued were not permanent life insurance policies but were actually a form of term insurance not guaranteed to run until death or maturity for the premium as promised. They further learned that the spousal rider was never taken off the 1996 policy and that the new policy for Mrs. Anderson in 1998 actually cost $50.00 per month in premium instead of just a one time fee of $50.00. The Andersons were paying for duplicate coverage on Mrs. Anderson that they did not request.

13. The above stated representations of the defendants to the plaintiffs were false when made, and were made with knowledge of their falseness or with reckless disregard for their falseness.

14. Further, the Defendants stood in fiduciary positions of trust to the Plaintiffs in regard to matters relating to their insurance investments.

15. Further, the Defendants, while acting in fiduciary positions of trust to the Plaintiffs, made the following fraudulent misrepresentations and/or omissions of fact and/or failed to disclose to them the following material facts:

(a) The Universal Life (hereinafter "UL") policy(ies) purchased by Plaintiffs were interest and investment sensitive, and the amounts of the deposit/premiums per month were dependent upon rates paid;

(b) The risks and disadvantages of the UL policy(ies) sold to Plaintiffs were not explained to them;

(c) The policy(ies) sold to Plaintiffs did not have level, permanent premiums per month and the cash values and death benefits were not guaranteed;

(d) The cost of insurance in said policy(ies) increases annually;

(e) The Plaintiffs' UL policy(ies) would not last till maturity, but will lapse prior to maturity with no value unless the Plaintiffs increase the amount of premiums paid;

(f) These policies were not a whole life (permanent) type of policy but were actually ULs;

(g) The spousal rider on Mr. Anderson's 1996 policy was not taken off;

(h) Plaintiffs cannot "withdraw" money from the policies and still retain full coverage;

(i) The difference between guaranteed rates and illustrated rates, which would directly affect the amount of money available to Plaintiffs at any age for withdrawal;

(j) Surrendering an already existing policy to purchase/fund a new policy is known as replacement/twisting and is in violation of Alabama statute, Alabama Insurance Regulations, and/or Allstate policy and procedures;

(k) Taking money from a policy as stated above is detrimental to the older, already existing policy(ies) in that death benefits are lost, cash value is used, and the Plaintiffs incur new and/or additional fees, charges and waiting periods with the new policy;

(l) The 1998 policy for Mrs. Anderson cost the Andersons more than the one time fee of $50.00.

*3 16. Said failures to disclose were made with the intention to deceive the Plaintiffs and did so deceive them to the[ir] detriment and damage. Had the [re] been full and complete disclosure to the Plaintiffs about what they were purchasing and how the products performed, the Plaintiffs would not have purchased the products from the Defendants.

17. Plaintiffs allege that various regulations of the Alabama Department of Insurance were not followed, complied with and/or were violated by the Defendants prior to the sale, at the time of the sale, and/or at the delivery of the policies involved in this action, including[,] but not limited to [,] Regulations 64, 69 and/or 70.

18. Plaintiffs further allege that the above was done for the purpose of and with the intent to deceive the Plaintiffs and to cause the Plaintiffs to purchase the policy(ies) involved in this action. Said failure to comply with such regulations was fraudulently done with the intent to induce or cause and did induce or cause the Plaintiffs to purchase the policy(ies) involved in this litigation, which proximately resulted in damage to Plaintiffs, as set out in this Complaint.

19. Plaintiffs allege[ ] that, in connection with the fraudulent conduct on the part of the Defendants,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 3
Not Reported in F.Supp.2d, 2001 WL 228057 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

said Defendants, separately and severally, consciously or deliberately engaged in oppression, fraud, conspiracy to commit fraud, negligence, and wantonness or malice with regard to the Plaintiffs.
20. Defendants, Allstate and John Does I-V, with respect to their agents, employees, and servants:
(a) Knew or should have known of the unfitness of the agents, employees or servants and employed them or continued to employ them, or use their services without proper instruction with disregard to the rights and financial safety and security of the Plaintiffs;
(b) Authorized the wrongful conduct;
(c) Ratified the wrongful conduct; and/or
(d) The acts of said agents, servants or employees were calculated to and did benefit said Defendants.
21. Plaintiffs allege that the acts or omissions of the Defendants as aforesaid were malicious, and that the Defendants deliberately omitted and/or failed to disclose same to Plaintiffs. Defendants' actions were intentional and wrongful and were done without just cause or excuse with the intent to injure the Plaintiffs. The acts or omissions of the Defendants were oppressive and Defendants deliberately omitted and/or failed to disclose to the Plaintiffs the aforesaid material facts. The acts or omissions of the Defendants were oppressive because they subjected the Plaintiffs to cruel and unjust hardship with conscious disregard for the rights of the Plaintiffs. Plaintiffs allege [ ] that the Defendants' conduct constituted a pattern or practice of fraudulent acts or omissions.
22. Plaintiffs [were] not aware of and did not have facts before them to discover the frauds as alleged [herein] until September 1999. Plaintiffs are not sophisticated and knowledgeable in the insurance business and its phrases and terms and were unable to understand the meaning and/or significance of same. Further, Plaintiffs are or may be incapable of reading and comprehending said insurance papers and/or documents.
*4 23. Said actions/inactions alleged herein were originated in part and/or in whole by Defendants Allstate and John Does I-V, and put into action through their agents, servants, and/or employees to induce potential insureds such as Plaintiffs to purchase Allstate products.
24. Further, Plaintiffs allege that the acts and omissions of Defendants were part of a plan, scheme, pattern and practice of all Defendants to misrepresent facts to Plaintiffs and suppress and conceal facts from Plaintiffs, and that said Defendants have participated in and accomplished the same and/or similar type[s] of actions and inactions on others prior and subsequent to Plaintiffs.
25. As a proximate consequence of Defendants' actions and inactions, Plaintiffs have been damaged in that they have lost much money; the payments made to the Allstate policies; will have to make more, additional payments to keep the[ir] policies from lapsing; have lost value and benefits in the older policy canceled in 1996; have lost permanent life insurance coverage; have lost and will lose future life insurance coverage; have lost the ability to purchase the actual product they were told they were purchasing; have lost the ability to purchase permanent life insurance at the same price as it could have been purchased when these policies were purchased; have suffered extreme emotional distress and/or mental anguish, and will in the future.

(*Id.*) More specifically, plaintiff asserted against all of the defendants claims of willful misrepresentation (*id.*, ¶¶ 26-29), reckless misrepresentation (*id.*, at ¶¶ 30-33), mistaken misrepresentation (*id.*, at ¶¶ 34-37), deceit (*id.*, ¶¶ 38-41), fraudulent deceit (*id.*, ¶¶ 42-45), suppression (*id.*, ¶¶ 46-50), and conspiracy (*id.*, ¶¶ 51-54).

2. This action was removed by all named defendants on or about October 30, 2000, on the basis that this Court may exercise jurisdiction pursuant to 28 U.S.C. § 1332 since defendant Jack Morgan was fraudulently joined in order to defeat federal jurisdiction. (Doc. 1, NOTICE OF REMOVAL) Attached to the notice of removal is the affidavit of Jack Morgan. (Doc. 1, Exhibit B)
1. My name is Jack Morgan. I am an independent contractor for Allstate Life Insurance Company and the owner of the Jack Morgan Agency. I have never met with the plaintiffs, Amon (sic) and Audrey Anderson, regarding the purchase of any Allstate life insurance policy. I have never made any representations nor had any discussion with the plaintiffs regarding the type of life insurance policy they purchased from Allstate Life Insurance

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                            Page 4
Not Reported in F.Supp.2d, 2001 WL 228057 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

Company.
2. At all times relevant to this action, Douglas Jeffries was a Life Specialist for and an employee of Allstate Life Insurance Company. Douglas Jeffries was not an agent or employee of the Jack Morgan Agency and I have no knowledge of any communications between Mr. Jeffries and Mr. and Mrs. Anderson concerning the insurance they purchased from Allstate Life Insurance Company.
*5 3. Attached hereto are the life insurance applications signed by the plaintiffs. Douglas Jeffries is shown on the attached applications as being the "writing agent" and was the individual who met with the plaintiffs regarding the purchase of these life insurance policies. Although I did not sign any of the life insurance applications, my name appears as the "Participating Agent" because I referred the Andersons to Mr. Jeffries for the purchase of any life insurance. As the "Participating Agent" I was never present during any discussion between Douglas Jeffries and the plaintiffs regarding the purchase of these policies and I never made any representations to the plaintiffs as to the terms, conditions or benefits of any life insurance policy. Moreover, I did not receive a sales commission for the sale of these policies.

(*Id.*) The two policies at issue reflect Morgan as being the "Participating Agent" and Douglas Jeffries as the "Writing Agent" or simply "Agent." (Doc. 1, Exhibit B, Attachments to Affidavit of Jack Morgan)

3. Plaintiffs filed their motion to remand on November 29, 2000 (Docs. 4 & 5), amending same on January 17, 2001 (Doc. 13), solely alleging that there was no fraudulent joinder of parties in order to destroy diversity of citizenship because they had stated a claim against Jack Morgan for conspiracy to defraud them with respect to the sales of the life insurance policies at issue in this case. (Doc. 4, at 2-3 ("In Plaintiffs' Complaint, they allege that, while the representations about the policies may have been made by Douglas Jeffries, Jack Morgan conspired with Jeffries to defraud the Plaintiffs. Plaintiffs' Complaint states a valid cause of action against Morgan under Alabama substantive law.... Clearly the Plaintiffs have stated at least an ' arguable' claim for civil conspiracy against Morgan, an Alabama resident, under Alabama law." ); Doc. 5, at 3 ("Plaintiffs' complaint states a claim against Morgan for conspiracy to defraud them, involving the sale of life insurance policies, which were misrepresented to them. Plaintiffs' complaint alleges that, while the representations about the policy may have been made by Jeffries, Morgan as a participating agent conspired with Jeffries."))

4. Plaintiffs' claims against Morgan has been whittled to one: civil conspiracy, the seventh count of the complaint. In that count, plaintiffs allege that the defendants "did conspire, scheme, plan, and act in concert and in among themselves to commit the frauds and wrongs as aforesaid in paragraphs 1-24 against Plaintiffs.... Said concerted actions were done to accomplish an unlawful, oppressive, immoral[ ] purpose and/or were done by unlawful, immoral means to accomplish a purpose not unlawful, oppressive, or immoral." (Doc. 1, Exhibit A, COMPLAINT)

CONCLUSIONS OF LAW

1. "Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356 (11th Cir.1996), citing 28 U.S.C. § 1441(a), *abrogated on other grounds Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000). Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). However, " [b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly.... Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir.1999).

*6 2. "[T]he removing party bears the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.,* 154 F .3d 1284, 1287 n. 4 (11th Cir.1998) (citation omitted); *Tapscott, supra* (

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 5
Not Reported in F.Supp.2d, 2001 WL 228057 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

"A removing defendant has the burden of proving the existence of federal jurisdiction."). Therefore, in this case, the burden is on the removing defendants to establish complete diversity, that is, the plaintiffs are diverse from every defendant, *Triggs, supra,* 154 F.3d at 1287 (citation omitted), and, in addition, to establish by a preponderance of the evidence that the amount in controversy more likely than not ´exceeds the $75,000 jurisdictional requirement, *Tapscott, supra,* 77 F.3d at 1357 ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $50,000 jurisdictional requirement."). FN1

> FN1. The Court finds that the removing parties have established by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement. (*See* Doc. 1, NOTICE OF REMOVAL, at ¶¶ 13-19; *id.,* COMPLAINT, at 13 ("WHEREFORE. Plaintiffs demands judgment against all Defendants, jointly and severally, in excess of the jurisdictional limits of this Court for compensatory and punitive damages, together with interest and costs."); Docs. 4-5 & 13 (no argument by plaintiff on the issue of amount in controversy))

3. In order to establish complete diversity of citizenship and the removability of this case, the removing parties must show that the joinder of the non-diverse party. Jack Morgan, was fraudulent. *Tapscott,* 77 F.3d at 1359 ("An action may nevertheless be removable if the joinder of non-diverse parties is fraudulent."); *see Sellers v. Foremost Ins. Co.,* 924 F.Supp. 1116, 1117 (M.D.Ala.1996) ("The citizenship of a resident defendant fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction."). "The burden of establishing fraudulent joinder is a heavy one." *Pacheco de Perez v. AT & T Co.,* 139 F.3d 1368, 1380 (11th Cir.1998).

4. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs,* 154 F.3d at 1287. Joinder has been deemed fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident non-diverse defendant; (2) when the plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court; and (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Id.* The removing parties make no argument that the second or third fraudulent joinder situations apply (*see* Docs. 7 & 14) and therefore, the Court focuses solely upon the first type of fraudulent joinder.

5. " 'If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.' ... The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs,* 154 F.3d at 1287 (citation omitted); *see also Pacheco de Perez, supra* ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court."); *Bedford v. Connecticut Mut. Life Ins. Co.,* 916 F.Supp. 1211, 1214 (M.D.Ala.1996) (" 'The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the plaintiff as the basis for the liability of the resident defendant could not possibly create such liability so that the assertion of the cause of action is as a matter of local law plainly a sham and frivolous.").

*7 6. "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.... In making its determination, the district court must

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 6
Not Reported in F.Supp.2d, 2001 WL 228057 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez,* 139 F.3d at 1380 (citations omitted); *see also Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997) (" To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff.... The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."); *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989) ("In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.").
While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," ..., the jurisdictional inquiry " must not subsume substantive determination." ... Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."

*Crowe, supra,* 113 F.3d at 1538.

7. The burden is on the defendants to show that the allegations of the complaint state no possible cause of action against defendant Jack Morgan. Defendants, however, need only show that the plaintiffs have no possible cause of action in Alabama "based on the plaintiff[ ]s['] pleadings at the time of removal[.]" *Id.* "In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." ' *Pacheco de Perez,* 139 F.3d at 1380-1381 (quoting *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997)).
In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show

that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." ... Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.
\*8 In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

*Crowe,* 113 F.3d at 1541-1542.

8. In cases such as this where there has been no discovery as of the time of removal, at least one district court in Alabama has settled on a standard that is equivalent to the standard imposed by Fed.R.Civ.P. 11 in making the remand decision. *Wright v. Metropolitan Life Ins. Co.,* 74 F.Supp.2d 1150 (N.D.Ala.1999); *Sellers, supra.* That standard is whether the plaintiffs have made "some showing that 'the allegations and other factual contentions have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." ' *Wright,* 74 F.Supp.2d at 1153 (ellipsis in original); *see also Sellers,* 924 F.Supp. at 1118-1119 (same). " Therefore, to block a fraudulent-joinder charge based on lack of legal support, a plaintiff need only show that her claim against a resident defendant is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Wright,* 74 F.Supp. at 1153; *see also Sellers,* 924 F.Supp. at 1119 ("[T]o block a fraudulent-joinder charge based on lack of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d     Page 7
Not Reported in F.Supp.2d, 2001 WL 228057 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

evidence, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that her claim against the resident defendant has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.").

9. In an attempt to show that the allegations of the complaint state no possible cause of action against Jack Morgan and that plaintiffs have made no showing that their civil conspiracy claim against Morgan and the other named and fictitious defendants has any legal or evidentiary support, or is likely to have legal or evidentiary support after a reasonable opportunity for further investigation or discovery, the removing defendants contend simply that since the plaintiffs now recognize that they have no viable fraud claim against Morgan a civil conspiracy claim cannot be maintained against him as a matter of law. (*See, e.g.,* Doc. 7, at 5)

10. Alabama law is clear that "[i]n order to succeed on a civil conspiracy claim, a plaintiff must prove a concerted action by two or more people that achieved an unlawful purpose or a lawful end by unlawful means." *Luck v. Primus Automotive Financial Services, Inc.,* 763 So.2d 243, 247 (Ala.2000); *see also McLemore v. Ford Motor Co.,* 628 So.2d 548, 550 (Ala.1993) ("A civil conspiracy requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means."); *Sadie v. Martin,* 468 So.2d 162, 165 (Ala.1985) ("A civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means."). However, the conspiracy itself furnishes no cause of action; rather the gist of the action is the wrong committed. *McLemore, supra; see also Holton v. Blue Cross & Blue Shield of South Carolina,* 56 F.Supp.2d 1338, 1347 (M.D.Ala.1999) ("Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action; rather, the gist of the action is not the conspiracy alleged but the wrong committed."); *Estate of Scott v. Scott,* 907 F.Supp. 1495, 1500 (M.D.Ala.1995) ("[C]onspiracy is not an independent cause of action, and therefore, 'when alleging conspiracy, a plaintiff must have a viable underlying cause of action.' "). Stated differently, if the underlying wrong provides no cause of action then neither does the conspiracy. *Jones v. BP Oil Co.,* 632 So.2d 435, 439 (Ala.1993); *see also Triple J. Cattle, Inc. v. Chambers,* 621 So.2d 1221, 1225 (Ala.1993) ("[A] conspiracy claim must fail if the underlying act itself would not support an action.").

\*9 11. It is also clear under Alabama civil conspiracy law that "one person's material relationship with a person accused of fraud" does not make "that first person subject to a claim of conspiracy to commit fraud." *Scott v. Commonwealth Land Title Ins. Co.,* 518 So.2d 102, 105 (Ala.1987); *see also Anglin v. Household Retail Services, Inc.,* 17 F.Supp.2d 1251, 1260 (M.D.Ala.1998) (noting that in *Scott,* the Alabama Supreme Court "explained that one's material relationship with a person accused of fraud does not make that person subject to a claim of conspiracy to commit fraud."). In other words, "[o]ne cannot inadvertently become a member of a civil conspiracy [;]" rather, "[t]he plaintiff must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy." *First Bank of Childersburg v. Florey,* 676 So.2d 324, 327 (Ala.Civ.App.1996).

12. In light of the foregoing, there can be no doubt that there is legal support for the plaintiffs' civil conspiracy to commit fraud claim that has been asserted against Morgan with respect to the legal arguments put forth by the defendants. *See Scott, supra,* 518 So.2d at 103 ("This is the only claim made against Commonwealth; therefore, on this appeal, the issue is whether the plaintiffs presented evidence of a conspiracy between Van Buren and Commonwealth to defraud the Scotts, to rebut the movant's prima facie showing that there had been no conspiracy."). However, it is also clear that the plaintiffs' civil conspiracy claim against Morgan fails both legally and from an evidentiary standpoint in regard to the clear legal requirement that all conspirators must have knowledge of, and the intent to bring about, the object of the claimed conspiracy, and that one individual's material relationship to the person accused of fraud does not make the first person subject to the claim of conspiracy to commit

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 8
Not Reported in F.Supp.2d, 2001 WL 228057 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

fraud. Here, the only fact that the plaintiffs have relating to Morgan's involvement in this case is that he is listed on both policies as the "Participating Agent." In his affidavit, Morgan denied making any representations to the Andersons regarding life insurance coverage provided by Allstate and states that he simply referred the Andersons to Jeffries for the purchase of life insurance. Because plaintiffs now concede that they can assert no claims against Morgan other than conspiracy to commit fraud this Court simply cannot find that the fact that Morgan referred the Andersons to Jeffries for life insurance, and is therefore on the policies as the participating agent, is enough to survive the defendants' contention and proof that Morgan was fraudulently joined for the sole purpose of defeating diversity jurisdiction in this Court. Morgan's relationship with Jeffries is simply not enough, without allegations and evidentiary support, or likely evidentiary support following a reasonable opportunity for further investigation or discovery, to presume that Morgan had actual knowledge of and the intent to obtain the Andersons' life insurance business by means of fraud, to support plaintiff's conspiracy to defraud claim asserted against Morgan. Stated differently, lacking here is " 'a reasonable basis for predicting that the state law *might* impose liability on the facts involved.' " *Crowe, supra,* 113 F.3d at 1542 (citations omitted & emphasis in original). Therefore, the Court finds Jack Morgan's joinder in this case fraudulent and the defendants' removal of this case from state court proper. In light of this conclusion, the Court simply GRANTS the defendants' motion to dismiss all claims made against Jack Morgan (Doc. 2). FN2

   FN2. It is unclear whether this Court may revisit the issue of subject matter jurisdiction if discovery reveals that Morgan is in fact an indispensable party to this action. *See Poore v. American-Amicable Life Ins. Co. of Texas,* 218 F.3d 1287, 1290-1291 (11th Cir.2000) (noting that while events occurring after removal which reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction, since a district

court must determine whether it has subject matter jurisdiction at the time of removal, some post-removal events, such as the joinder of indispensable parties, may divest the district court of jurisdiction).

CONCLUSION

**\*10** The defendants have carried their burden of showing that the allegations of plaintiffs' complaint fail to state a civil conspiracy cause of action under Alabama law against Jack Morgan. Therefore, plaintiffs' motion to remand, as amended (Docs. 4-5 & 13), is DENIED and the defendants' motion to dismiss all claims made against Jack Morgan (Doc. 2) is GRANTED.

S.D.Ala.,2001.
Anderson v. Allstate Life Ins. Co.
Not Reported in F.Supp.2d, 2001 WL 228057 (S.D.Ala.)

Briefs and Other Related Documents (Back to top)

• 1:00cv00958 (Docket) (Oct. 30, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.